IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MANNA MASSAQUOI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 3:25-cv-193 |
| | ) | Judge D. Brooks Smith |
| THE GEO GROUP, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM and ORDER OF COURT**

There are legends that tell us of magic words and incantations that confer upon those who utter them some special power. "Open Sesame!" and "Abracadabra!" come to mind. But the metaphoric door to a federal court does not open on the invocation of any such shibboleth. Every plaintiff must articulate a basis for a federal court to exercise its jurisdiction. And every federal judge, faced with a pleading asking him to hear and decide a case or controversy, must first determine that he may properly exercise jurisdiction over the matter. That said, our rules do not require a plaintiff to adhere to a preapproved script. This is especially true for litigants like Manna Massaquoi, who is proceeding without the assistance of a lawyer.

Massaquoi, an immigration detainee, filed a Complaint against The Geo Group, Inc. ("GEO")—the entity that managed the immigration detention center where he resided between 2022 and 2024—alleging that GEO paid him in amounts

1

below minimum wage for work he performed while in custody. GEO has moved to dismiss the Complaint for want of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1). But because Massaquoi's Complaint can be fairly read to allege a violation of federal law, the motion will be denied.

## I. Background

Massaquoi is an immigrant who, from August 10, 2022 to March 5, 2024, was detained at the Moshannon Valley Processing Center ("MVPC") just outside Philipsburg, Pennsylvania. (ECF No. 7 at 2). During his first two months at MVPC, he worked 12 hours a day, seven days a week as "a dorm/hall cleaner who cleaned the living areas, bathrooms and hallways." (*Id.* at 4). For his labor, he received $2 per day, exclusive of holidays and weekends. (*Id.*). He now seeks to recover the difference between those wages and what he would have received if paid minimum wage. (ECF No. 7 at 5). He also "requests nominal and punitive damages of $50,000." (*Id.*).

GEO has moved to dismiss Massaquoi's complaint, pursuant to Federal Rule of Civil Procedure 12(b)(1), which permits defendants to challenge the existence of subject-matter jurisdiction. (ECF No. 12). According to GEO's motion, this Court lacks jurisdiction to hear Massaquoi's case because he alleges only violations of state law and has not established an amount in controversy in excess of $75,000. (ECF No. 13 at 4). Massaquoi does not dispute the amount in controversy but insists his

Complaint alleges that "both Pennsylvania state and Federal laws were violated." (ECF No. 17 at 2–3).

## II.     Legal Standard

GEO has launched what the Third Circuit refers to as "a facial . . . attack" under Rule 12(b)(1). *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). Unlike a so-called "factual attack," a facial attack "challenges subject matter jurisdiction without disputing the facts alleged in the complaint." *Id.* It is, therefore, "similar to a Rule 12(b)(6) motion" in that it requires the Court to "consider the allegations of the complaint as true," *Petruska v. Gannon Univ.*, 462, G.3d 294, 302 n.3 (3d Cir. 2006), and dismiss "only if it appears that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction," *Hendrick v. Aramark Corp.*, 263 F. Supp. 3d 514, 517 (E.D. Pa. 2017) (citing *Cardio-Med. Assocs., Ltd. v. Crozer-Chester Med. Ctr.*, 721 F.2d 68, 75 (3d Cir. 1983)). To that end, "[t]he Supreme Court has noted that [dismissals under Rule 12(b)(1)] 'should be granted very sparingly.'" *Cardio-Med.*, 721 F.2d at 75 (quoting *Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 746 (1976)).

In the search for such a colorable claim, the Court must "liberally construe" Massaquoi's pleadings. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011) ("The obligation to liberally construe a *pro se* litigant's pleadings is well-established."). But it may not spin claims out of thin air or rewrite the complaint wholesale to cure

an otherwise fatal defect. *See Steinhardt v. Bernardsville Police Dep't*, No. 17-2169, 2020 WL 5204066, at *7 (D.N.J. Aug. 31, 2020) (holding that a court may not read claims into a complaint if those claims are inconsistent with the litigant's allegations). An inartful pleading will survive so long as it is fairly read to supply subject-matter jurisdiction. *See Fleming v. Warren*, No. 19-2026, 2019 WL 5086962, at *3–4 (E.D. Pa. Oct. 10, 2019) (reading a Fourteenth Amendment due process claim into a *pro se* pleading that explicitly cited only Pennsylvania malpractice law). That jurisdiction must, however, source from the complaint, not the imagination of a creative judge. *See In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 244 (3d Cir. 2012) ("With respect to 12(b)(1) motions in particular, the plaintiff must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims (here, the right to jurisdiction), rather than facts that are merely consistent with such a right.") (citation modified); *see also Gray v. Occidental Life Ins. Co. of Cal.*, 387 F.2d 935, 936–37 (3d Cir. 1968) (assessing whether a pro se plaintiff adequately alleged the amount in controversy necessary to invoke diversity jurisdiction); *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (noting limits to the procedural flexibility afforded pro se litigants).

### III. Analysis

In civil matters, federal District Courts primarily exercise either federal question jurisdiction under 28 U.S.C. § 1331 or diversity jurisdiction under 28

U.S.C. § 1332. To invoke the latter, a plaintiff must plead diversity of citizenship and an amount in controversy that exceeds $75,000. 28 U.S.C. § 1332(a). Massaquoi's Complaint does not satisfy these diversity requirements. Recall that Massaquoi worked at MVPC from August 10, 2022 to October 13, 2022. He logged 12 hours a day, seven days a week (a total of 780 hours) and received $2 per day, exclusive of holidays and weekends. All told, that adds up to roughly $90 in compensation. The minimum wage in Pennsylvania is $7.25 per hour. *See* Pa. Cons. Stat. § 333.104(a.1). And the overtime rate is "not less than one and one-half times the [employee's] regular rate." *Id.* 333.104(c). Based on this, Massaquoi alleges that he ought to have received $7.25 per hour for 520 hours of regular work and $10.88 per hour for 260 hours of overtime work, or $6,598.80 in total. Less the $90 he actually received, that leaves damages of $6,508.80. And even aggregating those damages with the $50,000 in nominal and punitive damages he seeks, Massaquoi still falls well short of the $75,000 threshold. Accordingly, he cannot invoke diversity jurisdiction under Section 1332.

That leaves us to consider federal question jurisdiction. Massaquoi cites Section 1331 as a jurisdictional hook. (ECF No. 7 at 2). But, as GEO highlights, his Complaint seeks only "to enforce the State of Pennsylvania minimum wage laws and to remedy the unjust enrichment that results from GEO's longstanding failure to adequately pay immigration detainees for their work at [MVPC]." (*Id.* at 1). Any

ancillary references to federal and constitutional law, such as 42 U.S.C. Section 1983 and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), are either "immaterial and made solely for the purpose of obtaining jurisdiction" or "wholly insubstantial and frivolous." *Bell v. Hood*, 327 U.S. 678, 682–83 (1946). They are not, in other words, a basis for establishing federal question jurisdiction in this Court.

The absence of an explicit federal claim, however, is not determinative. *See Club Comanche, Inc. v. Gov't of V.I.*, 278 F.3d 250, 259 (3d Cir. 2002) ("A plaintiff's lack of reference, or erroneous reference to federal law is not controlling."). I am "under a duty to examine the pleadings to determine if the allegations provide for relief under any theory." *Simmons v. Cmty. Serv. Providers, Inc.*, 847 F. Supp. 351, 353 (E.D. Pa. 1994); *see Small v. Chao*, 398 F.3d 894, 898 (7th Cir. 2005) ("[W]e should ask whether any set of facts consistent with the complaint would give [the *pro se* plaintiff] a right to recover, no matter what the legal theory."). The key question is whether "the opposing party [has] receive[d] notice as to what is at issue in the lawsuit." *Elec. Constr. & Maint. Co. v. Maeda Pac. Corp.*, 764 F.2d 619, 622 (9th Cir. 1985). The Supreme Court, for example, has disclaimed a rule that would require "plaintiffs seeking damages for violations of constitutional rights to invoke § 1983 expressly in order to state a claim." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014). What matters, in a case like this one, is whether Massaquoi's Complaint

"is fairly construed as raising a federal question," even if it neglects to cite the statute on which that question turns. *Bell v. Pleasantville Hous. Auth.*, 443 F. App'x 731, 735 (3d Cir. 2011).

In *Bell*, the Third Circuit reversed a District Court's decision to dismiss a *pro se* plaintiff's complaint for lack of jurisdiction because the facts the plaintiff alleged, and his invocation of Section 1331, reasonably suggested a violation of his Fourteenth Amendment due process rights. *See id.* Similarly, Massaquoi's allegations, and his invocation of Section 1331, are "fairly construed" as raising a claim under the Fair Labor Standards Act ("FLSA"), the federal minimum wage law.

FLSA provides a private right of action for employees whose employers pay them below minimum wage. *See* 29 U.S.C. § 216(b). Massaquoi alleges the existence of an employment relationship between himself and GEO. (ECF No. 7 at 4). He sets forth his hours worked. (*Id.*). And he alleges that he was paid well below the federal minimum wage of $7.25 per hour. (*Id.*). That satisfies the elements of a FLSA claim. *See Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014). Notably, Massaquoi's response brief also clarifies that he intends to press a claim under "the Federal minimum hourly wage law." (ECF No. 17 at 3). Thus, although the Complaint cites only the Pennsylvania Minimum Wage Act ("PMWA"), "the common thread running through [Massaquoi's] filings" is a belief that GEO wrongly paid him less than $7.25 per hour (the minimum wage under both federal and

7

Pennsylvania law). *Bell*, 443 F. App'x at 735. "It is hardly a stretch, then," *id.*, to characterize his claim as "arising under the . . . laws . . . of the United States" for purposes of subject-matter jurisdiction, 28 U.S.C. § 1331. *See generally Bansept v. G&M Auto.*, 434 F. Supp. 3d 253, 258–59 (E.D. Pa. 2020) (exercising jurisdiction over a plaintiff's FLSA and PMWA claims).

In denying GEO's motion to dismiss, the Court expresses no opinion on the ultimate merits of Massaquoi's FLSA claim. *See Hartig Drug Co., Inc. v. Senju Pharma. Co. Ltd.*, 836 F.3d 261, 272 (3d Cir. 2016) (cautioning courts against expanding Rule 12(b)(1) to test the merits of a plaintiff's claims). It holds only that the claim is not "immaterial" or "wholly insubstantial and frivolous." *Bell*, 327 U.S. at 682. But GEO remains free to test the strength of the claim in the ordinary course.

## ORDER OF COURT

AND NOW, this 4th of February, 2026, for the reasons set forth herein, it is hereby ORDERED that Defendant's motion to dismiss (ECF No. 12) is DENIED.

D. Brooks Smith
_____

D. Brooks Smith
United States Circuit Judge
Sitting by Designation
